| | | |
|---|---|---|
| **KELLY DRENNAN,** | ) | |
| **328 Acorn Drive** | ) | **Case No.**_____ |
| **Jefferson City, MO 65109** | ) | |
| | ) | **Date Filed:**_____ |
| **MARQUERITA MAEDER,** | ) | |
| **PO Box 1213** | ) | **JURY TRIAL DEMANDED** |
| **Rocky Mount, MO 65072** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **MARLENE HANDRICK,** | ) | |
| **22750 Rose Meadow Lane** | ) | |
| **Waynesville, MO 65583** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MILLER COUNTY AMBULANCE DISTRICT,** | ) | |
| **SERVE AGENT:** | ) | |
| **Thomas Spriggs** | ) | |
| **1304 S. Aurora** | ) | |
| **Eldon, MO 65026** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **THOMAS SPRIGGS,** | ) | |
| **SERVE AT PLACE OF EMPLOYMENT:** | ) | |
| **1304 S. Aurora** | ) | |
| **Eldon, MO 65026** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT AND PETITION FOR DAMAGES

COMES NOW Plaintiffs Kelly Drennan, Marquerita "Misty" Maeder, and Marlene Handrick, by

and through their attorney of record, and for the following causes of action against Defendants Miller

County Ambulance District (hereinafter "Miller") and Thomas Spriggs (hereinafter "Spriggs"), states and

alleges as follows:

## INTRODUCTION

1. This action is brought to remedy discrimination, sexual harassment, and retaliation on the basis of gender and age in the terms, conditions and privileges of employment, all in violation of Title VII of the Civil Rights Act of 1964 codified at 42 U.S.C. § 2000e et. seq. (hereinafter "Title VII").

2. The claims hereinafter alleged seek declaratory and injunctive relief and compensatory and punitive damages for defendant's intentional gender discrimination, harassment, and retaliation under Title VII.

**PARTIES**

3. Plaintiff Kelly Drennan (hereinafter "Drennan") is a female citizen and resident of the State of Missouri and is over the age of 40. Drennan is a former employee of Defendant Miller and former subordinate of Defendant Spriggs.

4. Plaintiff Marquerita Maeder (hereinafter "Maeder") is a female citizen and resident of the State of Missouri and is over the age of 40. Maeder is a former employee of Defendant Miller and a former subordinate of Defendant Spriggs.

5. Plaintiff Marlene Handrick  (hereinafter "Handrick") is a female citizen and resident of the State of Missouri and is over the age of 40. Handrick is a current employee of Defendant Miller and a former subordinate of Defendant Spriggs.

6. Defendant Miller County Ambulance District (hereinafter "Miller") is a municipal fire department and emergency service with its principal office in Eldon, Miller County, Missouri.

7. Defendant Spriggs, upon information and belief, is a male citizen and resident of the State of Missouri, and at all relevant times referred to herein, served as the Administrator for Defendant Miller and was responsible for supervising employees working for Defendant Miller.

8. At all times relevant to the allegations in this Complaint, Defendants were "employers" within the meaning of Title VII and all of the acts, conduct, and omissions of the Defendants were

Case 2:10-cv-04084-NKL   Document 1   Filed 04/25/10   Page 2 of 21

performed by its agents, representatives and employees while in the course and scope of their agency or employment.

## JURISDICTION AND VENUE

7.      Defendant's unlawful employment practices complained of herein occurred in Miller County, Missouri, and accordingly, venue in the United States District Court for the Western District of Missouri, Central Division, is appropriate.

8.      On or about July 22, 2009, plaintiff Drennan was deemed to have duly filed her Charge of Discrimination with Equal Employment Opportunity Commission (hereafter "EEOC"), complaining of the acts of age and gender discrimination, sexual harassment, and retaliation alleged herein.  Plaintiff Drennan received her Notice of Suit Rights from the EEOC on or about January 26, 2010.  Accordingly, plaintiff Drennan has fully complied with all prerequisites to jurisdiction of this Court under the EEOC.

9.      On or about August 20, 2009, plaintiff Maeder was deemed to have duly filed her Charge of Discrimination with Equal Employment Opportunity Commission (hereafter "EEOC"), complaining of the acts of age and gender discrimination, sexual harassment, and retaliation alleged herein.  Plaintiff Maeder received her Notice of Suit Rights from the EEOC on or about April 8, 2010.  Accordingly, plaintiff Maeder has fully complied with all prerequisites to jurisdiction of this Court under the EEOC.

10.     On or about July 14, 2009 plaintiff Handrick was deemed to have duly filed her Charge of Discrimination with Equal Employment Opportunity Commission (hereafter "EEOC"), complaining of the acts of age and gender discrimination, sexual harassment, and retaliation alleged herein.  Plaintiff Handrick received her Notice of Suit Rights from the EEOC on or about April 12, 2010.  Accordingly, plaintiff Handrick has fully complied with all prerequisites to jurisdiction of this Court under the EEOC.

## FACTUAL ALLEGATIONS

**Plaintiff Drennan**

3

11.     Around April and May 2007, plaintiff Drennan was recruited by Dennis Hogue (hereinafter "Hogue") in his capacity as the President of the Board of Directors for the Miller County Ambulance District to serve as Defendant Miller's Education Coordinator, a position which Hogue promised would offer comparable hours, pay, and benefits to Drennan's current job at another ambulance service facility.

12.     In May 2007, Drennan agreed to work for Defendant Miller on a part-time basis at a rate of $15.50 per hour while keeping her other full time position.

13.     In September 2007, Drennan decided to work for Defendant Miller full time, as Hogue promised comparable pay and a position as the Education Coordinator.

14.     Upon starting full time work with Defendant Miller, Drennan discovered that instead of receiving the $21.27 per hour she had been making, Defendant Miller was only paying Drennan $17/hour, Drennan was given 3 less weeks of vacation time per year, and was denied the position of Education Coordinator and was instead worked as a paramedic for Defendant Miller.

15.     When Drennan looked into the matter further, she was told by Hogue that there was nothing he could do about the matter. Drennan contacted Defendant Spriggs and other Board members, but received no response.

16.     From 2007 through Drennan's discharge from her employment with Defendant Miller, Drennan was repeatedly called "Satan" and "Beelzebub" by a coworker. Drennan repeatedly told this coworker to stop calling Drennan those names, as it was offensive to Drennan, but Drennan received no relief.

17.     On at least one occasion, Defendant Spriggs was present when Drennan was being harassed by this coworker and called names, and when Drennan asked Defendant Spriggs to tell this coworker to cease harassing her, Defendant Spriggs smirked and walked away without taking any action.

Case 2:10-cv-04084-NKL   Document 1   Filed 04/25/10   Page 4 of 21

18.     On or about October 6, 2007, Drennan injured a finger at work and required stitches, but Defendant Spriggs denied Drennan medical treatment, ordering Drennan to help sod the facility's lawn with her coworkers. Drennan was told by Hogue to "toughen up."

19.     On or about February 15, 2008, Drennan was erroneously accused by Defendant Spriggs and another supervisor that she had administered the wrong treatment to a pediatric seizure patient and threatened to suspend Drennan. Drennan was told she could not question the staff doctor about whether her actions were justified.

20.     Drennan was never suspended or found to have done anything wrong.

21.     On or about December 9, 2008, Hogue contacted Drennan at home asking what Drennan was doing. Drennan replied she was making soup. Hogue complained that he and his coworker did not have anything to eat for their shift, so Drennan invited Hogue and his coworker to stop by on their way to work to pick up some soup.

22.     Hogue (Drennan's direct supervisor) then asked Drennan to contact a neighboring ambulance service posing as a secretary for a county commissioner and leave a message with their staff that Cole County had hired a new EMS Manager and that they were considering merging with Defendant Miller. Drennan refused and Hogue threatened Drennan's job.

23.     Later that day, Hogue and a coworker stopped by Drennan's to pick up the soup. When the coworker went to another room, Hogue pinched Drennan's nipple. Drennan told Hogue his behavior was unacceptable. Hogue tried to force Drennan into a hug, and Drennan demanded Hogue leave. Hogue again threatened Drennan's job.

24.     On or about December 31, 2008, Hogue and Drennan were preparing for a meeting. Hogue ordered Drennan to make him coffee because making coffee was "woman's work" and if Drennan refused, Hogue threatened to fire her.

5

25.     During the December 31, 2008 meeting, Defendant Sprigg forced Drennan into a hug in front of coworkers. Drennan told Defendant Sprigg not to touch her and Defendant Sprigg laughed.

26.     Later the same day, Drennan's home was broken into and Drennan asked Defendant Sprigg if she could leave work to check on her home, and Defendant Sprigg gave his permission.

27.     When Drennan returned to work from checking her home, Defendant Sprigg yelled at Drennan in front of numerous coworkers, berating Drennan for her "absenteeism."

28.     In February 2009, Drennan applied for a promotion and was denied an interview. The position ultimately went to a male. Since 2008, all promotions at Defendant Miller went to men.

29.     On or about May 6, 2009, Drennan was told by a coworker that she would "look good in bibs and nothing else" in front of Defendant Sprigg, who refused to address the situation.

30.     On or about May 18, 2009, Defendant Sprigg remarked to Drennan that she should "be doing woman's work and cleaning up" after a meeting. Drennan refused. Defendant Sprigg told Drennan that she made "too much money for a woman."

31.     On or about May 23, 2009 when Drennan called into work sick, Drennan was told she would need a doctor's note to excuse her absence. No other employees were required to present doctor's notes when taking sick leave.

32.     On or about June 17, 2009, Defendant Spriggs called Drennan into his office and began yelling at Drennan regarding her absenteeism from December 31, 2008. Numerous coworkers were within earshot, and Defendant Spriggs refused to allow Drennan to close his office door. After this meeting, Defendant Spriggs put a notice on the employee bulletin board referring to the incident.

33.     Drennan was informed by a coworker that Defendant Spriggs wanted to fire Drennan because Spriggs did not like it when women voiced their opinions.

34.     On or about June 23, 2009, Drennan caught the Human Resources Manager rifling through Drennan's purse and personal belongings in the bunk room without Drennan's permission.

6

35.     On or about June 30, 2009, Drennan was injured on the job. Defendant Spriggs refused to fill out an accident report.

36.     Drennan had the Assistant Administrator fill out an accident report for her. The following day, Drennan was informed by a doctor that she needed to soak her leg and rest. Drennan called HR and told HR she would need to take a vacation day for her next shift.

37.     While on vacation time from Defendant Miller, Drennan received calls from her other part time employer that Hogue had contacted their office to request Drennan's schedule and wanted information on Drennan.

38.     On a scheduled day off, July 9, 2009, Drennan received an email from Defendant Spriggs asking questions about her injury and her schedule. Drennan told Defendant Spriggs the situation and informed Spriggs that she believed she was being discriminated against by Defendant Spriggs and Defendant Miller.

39.     Defendant Spriggs replied that Drennan could either resign or be fired. Drennan resigned under duress.

40.     Once Drennan was discharged, Drennan learned from a coworker that Defendant Spriggs kept a "hit list" of the employees he wanted to terminate. The top three employees were Drennan, Maeder, and Handrick.

**Plaintiff Maeder:**

41.     Plaintiff Maeder was promoted to Manager at Defendant Miller around September 2005.

42.     In 2006, Defendant Miller hired a new Administrator, Defendant Spriggs and a new Field Supervisor, Stan Davis (hereinafter "Davis").

43.     Maeder's office adjoined Spriggs' office, so Maeder often overheard conversations that took place in Spriggs' office.

7

44.     Within his first week as Field Supervisor, Davis told Maeder that a woman did not belong in her position and any changes or purchases made while performing her job duties needed to be first approved by him.

45.     Meanwhile, Maeder was overhearing Davis' comments about her female coworkers, such as "she's sweet enough to eat" and "she has a tight ass."

46.     Maeder informed Davis that she thought his comments were inappropriate. Davis' response was to show Maeder a picture on his computer of two nude women doing obscene things to one another.

47.     Maeder complained about the incident to Russ Hogan, Assistant Administrator, who said to Maeder, "you know you like it."

48.     When Davis created a new check sheet for stocking the trucks, he told Maeder that she needed to stock the trucks accordingly and that doing so was "woman's work."

49.     In 2006, Davis contacted Maeder late at night at home asking Maeder to go into the supply and get a prescription drug for him for his father who was dying of a heart condition. Maeder refused, and Davis was irate with Maeder.

50.     Davis then had his own key made to Maeder's supply room and began using Maeder's computer to order supplies that were not needed or regularly used in an attempt to set up Maeder as performing her duties incompetently. Maeder password secured her computer to stop the frivolous orderings.

51.     In 2007, prescription medications began missing from the supply room. When Maeder reported this to Davis, Davis' response to Maeder was that she should have "kept quiet."

52.     Maeder reported this to Defendant Spriggs, who did nothing, claiming Maeder had no proof Davis was taking medications. Maeder insisted upon getting a locked cabinet for the medications in the supply room to end the theft.

8

53.     At a staff meeting following the medication incident, Russ Hogan, the former Assistant Administrator, told Davis and an employee named Fanci Bennett that they needed to stop having sex on the furniture because the furniture was getting broken. This comment was made in front of Defendant Spriggs, who laughed with the other male employees. Maeder spoke up, stating that the behavior and the comments were completely inappropriate. Management took no action.

54.     The sexual harassment in the office heightened as Maeder overheard the male employees make such comments as: "I'd like to have breakfast between those legs," calling women fat, referring to their "boxes," telling women they are "stupid" and should "stay at home" and Maeder herself was told she was "too old."

55.     Maeder overheard Defendant Spriggs humiliate a female employee, referring to her and a male employee as "Beauty and the Beast" because the female coworker is "meek and has a Swedish accent," that her spelling was poor, and that she was "stupid."

56.     Fanci Bennett, an employee of Defendant Miller, eventually brought a complaints of discrimination against Defendant Miller.   Maeder was contacted after 9:30 at night, at home, to come to the office and give a statement to an investigator.

57.     Maeder cooperated with the investigation and told the investigator about all the incidents of sexual harassment and hostile work environment she had witnessed, also relaying that she believed giving this information to the investigator would cause Maeder to become a target.

58.     Two days after Maeder spoke to the investigator, the HR Manager reprimanded Maeder for telling the investigator information that resulted in Russ Hogan's termination. HR demanded to know what Maeder had told the investigator and Maeder refused to tell.

59.     Maeder discovered that few people had spoken to the investigator because they had been threatened by Defendant Spriggs and others that if they spoke to the investigator, Defendant Spriggs would discredit them using slip ups in their work conduct.

9

60.      After Maeder refused to divulge further information, Maeder was constantly being written up for pretextual reasons by members of management and Defendant Spriggs refused to look into the matter.

61.      On more than one occasion, Defendant Spriggs has done nothing when a coworker (Bill Holman) has gotten verbally aggressive with Maeder and other female employees, stating "I will never question Bill's decisions."

62.      In May 2008, Holman contacted the paramedic instructor at the Bureau of Emergency Medical Services in an attempt to prevent Maeder from receiving her paramedic's license. Defendant Spriggs did not do anything about this situation.

63.      Maeder was informed that Defendant Spriggs had a "hit list" and her name was on it. Maeder was informed that one of the female employees on the list had been terminated and that she might be next.

64.      HR approached numerous employees at Defendant Miller, asking them for any emails or correspondence from Maeder, as they were working on getting Maeder "out of here."

65.      In July 2009, Maeder started getting sick more often at work and requested that the mold be tested in the supply room, as several other employees had also complained.

66.       On July 29, 2009, 12 days after requesting the mold tests, Maeder received a letter of termination from Defendant Spriggs via email without any reason given for the termination.

67.      Since Defendant Spriggs became an Administrator, over 11 female employees have been either forced to resign or have been terminated, including all three plaintiffs.

**Plaintiff Handrick:**

68.      In addition to experiencing numerous incidents similar to those described above, Handrick experienced other incidents of discrimination, harassment and retaliation by Defendants.

10

69.     On several occasions since Defendant Spriggs became an Administrator, Handrick was subjected to belittling comments, was yelled at and berated in front of coworkers, and was treated less favorably than her male coworkers.  This behavior continues to the present time.

70.     On at least one occasion, Handrick was inappropriately forced into a hug by Bill Holman. Handrick told Holman to stop, and Holman only laughed.

71.     On March 8, 2009, Handrick complained to Defendant Spriggs that she was being treated differently than her male coworkers due to her gender and had been sexually harassed.

72.     Defendant Spriggs stated to Handrick's harasser that Handrick's complaint was being put on "the back burner."

73.     At a Board meeting, the Board decided to keep Handrick and her harasser separated at work, allowing the harasser to keep his supervisory position and Handrick in her position, but on separate shifts.

74.     On June 18, 2009, Defendant Spriggs approached Handrick while she was on duty. Defendant Spriggs informed Handrick that the Board had given him carte blanche to hire and fire as he saw fit and that he was there to terminate Handrick, alleging Handrick "misled" Spriggs regarding the March 8 incident.

75.     Handrick called her partner to come clear up any misconceptions Defendant Spriggs had regarding the March 8 incident, as her partner had witnessed the events in question and verified Handrick's version of the events.

76.     While Spriggs was speaking to Handrick's partner, he left Handrick's termination paperwork in plain view on the hood of the ambulance for all Handrick's coworkers to see.

77.     After speaking to Handrick's partner, Defendant Spriggs agreed that a meeting should be held between himself, Handrick, Handrick's harasser, and one of Handrick's supervisors as a witness.

11

78.     On his way back to the Eldon base after meeting Handrick in the field, Defendant Spriggs paid a visit to Handrick's harasser, notifying him of the planned meeting and assuring the harasser that Spriggs supported him 100%.

79.     After her shift, Handrick received numerous calls from coworkers asking whether she had been terminated after a few of her coworkers had seen the termination papers on the hood of the ambulance causing Handrick much grief and embarrassment.

80.     On June 22, 2009, Handrick met with Defendant Spriggs, her harasser, and her supervisor for a meeting regarding her complaints of gender discrimination and harassment. The meeting was treated as a mediation.

81.     The June 22 mediation failed because Handrick's harasser refused to agree to Handrick's demands that they no longer work together and that her harasser be demoted from his supervisory position.

82.     Fearful of ongoing discrimination, harassment, and retaliation, Handrick filed a charge of discrimination on July 14, 2009 and called in sick to work on July 15, 2009 due to stress with Handrick's next scheduled shift on Sunday, July 20, 2009.

83.     On July 18, 2009, Defendant Spriggs informed Handrick that if she wanted to come to work on her next shift, she would be required to submit a doctor's release accounting for her sick day and her ability to return to work. Defendant Spriggs does not require the same releases from Handrick's similarly situated male coworkers.

84.     Handrick was finally cleared to return to work on July 21, 2009, undergoing her fourth physical examination at Defendant Sprigg's request in a two-month period.

85.     Handrick updated her complaints of retaliation on August 11, 2009.

86.     Since updating her complaints, Handrick was threatened with shift changes, was ridiculed when she complained of ongoing snide remarks made to her by her harasser, was given grief

12

by Defendant Spriggs when Handrick requested unpaid time off to undergo a medical procedure, and was pretextually counseled and written up on various occasions.

**COUNT I**
**Title VII – Gender Discrimination**
**All Plaintiffs v. Defendant**

COMES NOW Plaintiffs and for Count I of their Complaint against Defendant, alleges and states as follows:

87.    Plaintiffs incorporate and re-allege by reference the allegations in the preceding paragraphs as if set forth herein.

88.    The conduct and actions of the above described perpetrators as set forth herein constituted disparate treatment towards Plaintiffs on the basis of their gender (female).

89.    The actions and conduct by the above described perpetrators as set forth herein was pervasive and regular.

90.    The actions and conduct of the above described perpetrators as set forth herein created an abusive, hostile, offensive and intimidating work environment and detrimentally affected Plaintiffs.

91.    The conduct described herein would have detrimentally affected a reasonable person of the same sex in Plaintiffs' position.

92.    Management level employees knew or should have known of the gender discrimination described herein.

93.    In addition, management level employees knew or should have known of the pervasive gender discrimination problems, but failed to address the problem, and further failed to implement effective and appropriate procedures to stop the discriminatory conduct.

94.     The conduct and actions of the above described perpetrators as discussed herein was conducted on the basis of Plaintiffs' sex as a female employees and constituted discrimination based on gender.

95.     The actions and conduct of those individuals and/or other perpetrators as alleged herein created a sexually hostile, offensive and intimidating work environment.

96.     By failing to conduct a prompt and thorough investigation of Plaintiffs' allegations, Defendant exacerbated the gender discrimination in Plaintiffs' work place.

97.     The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of plaintiffs, and therefore Plaintiffs are entitled to punitive damages from defendant, to punish Defendants and to deter Defendant and others from like conduct.

98.     The aforementioned harassment of Plaintiffs was discriminatory and intentional, and constituted a disparity in treatment toward Plaintiffs because of their gender (female), in willful violation of the Title VII.

99.     In engaging in the aforementioned unlawful practices, Defendant acted in conscious and reckless disregard for Plaintiffs' physical and emotional well-being and their federally protected civil rights.

100.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered irreparable injury, including past and future pecuniary losses, lost benefits, emotional pain, suffering, humiliation, inconvenience, mental anguish and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

(A)     Declaring all acts in violation of Title VII;

(B)     Enjoining and permanently restraining Defendant from continued violations of

14

the Title VII;

(C)     Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiffs' respective employment opportunities;

(D)     Directing Defendant to unconditionally reinstate Plaintiffs to their prior respective positions, or if not feasible, to pay each Plaintiff front pay in lieu of reinstatement, and to make each Plaintiff whole for all earnings and benefits she would have received but for the Defendant's wrongful conduct, including, but not limited to, wages and other lost benefits;

(E)     Awarding Plaintiffs compensatory and punitive damages;

(F)     Awarding Plaintiffs the costs of this action, prejudgment interest and reasonable attorneys fees; and

(G)     Granting such additional relief as the Court may deem just and proper.

**COUNT II**
**Title VII: Sexual Harassment**
**All Plaintiffs v. Defendant**

COMES NOW Plaintiffs and for Count II of their Complaint against Defendant allege and state as follows:

101.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if set forth herein.

102.     By virtue of the aforementioned factual allegations of harassment, from at least 2007, inappropriate conduct towards Plaintiffs through Plaintiffs' respective final day of employment with Defendant, Plaintiffs suffered a pattern and practice of severe, pervasive, and intolerable harassment constituting a hostile work environment.

15

103.     Defendants exacerbated, allowed, and tolerated a pattern and practice of harassing Plaintiffs by ignoring Plaintiffs' respective complaints, failing to investigate incidents of harassment and discrimination, and by failing to remedy the same, thereby forcing Plaintiffs' respective terminations or discharges.

104.     The aforementioned harassment of Plaintiffs was unreasonable, routine, severe, pervasive, continuous, discriminatory and intentional, and constituted a disparity in treatment toward Plaintiffs because of their gender (female), in willful violation of Title VII.

105.     In engaging in the aforementioned unlawful practices, Defendant acted in conscious and reckless disregard for Plaintiffs' physical and emotional well-being and their federally protected civil rights.

106.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered irreparable injury, including past and future pecuniary losses, lost benefits, emotional pain, suffering, humiliation, inconvenience, mental anguish and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

(A) Declaring all acts in violation of Title VII;

(B) Enjoining and permanently restraining Defendant from continued violations of Title VII;

(C) Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiffs' respective employment opportunities;

(D) Directing Defendant to unconditionally reinstate Plaintiffs to their respective prior positions, or if not feasible, to pay front pay to each Plaintiff in lieu of reinstatement, and to make each Plaintiff whole for all earnings

16

and benefits she would have received but for the Defendant's wrongful conduct, including, but not limited to, wages and other lost benefits;

(E)   Awarding Plaintiffs compensatory and punitive damages;

(F)   Awarding Plaintiffs the costs of this action, prejudgment interest and reasonable attorneys fees; and

(G)   Granting such additional relief as the Court may deem just and proper.

**COUNT II**
**Title VII: Age Discrimination**
**Drennan and Maeder  v. All Defendants**

COMES NOW Plaintiffs and for Count II of their Complaint against Defendant allege and state as follows:

107.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if set forth herein.

108.     By virtue of the aforementioned factual allegations of harassment, since at least 2007, inappropriate conduct towards Plaintiffs through Plaintiffs' respective final day of employment with Defendant, Plaintiffs suffered a pattern and practice of severe, pervasive, and intolerable harassment constituting a hostile work environment.

109.     Defendants exacerbated, allowed, and tolerated a pattern and practice of harassing Plaintiffs by ignoring Plaintiffs' respective complaints, failing to investigate incidents of harassment and discrimination, and by failing to remedy the same, thereby forcing Plaintiffs' respective terminations or discharges.

110.     The aforementioned harassment of Plaintiffs was unreasonable, routine, severe, pervasive, continuous, discriminatory and intentional, and constituted a disparity in treatment toward Plaintiffs because of their age (over 40), in willful violation of Title VII.

17

111.     In engaging in the aforementioned unlawful practices, Defendant acted in conscious and reckless disregard for Plaintiffs' physical and emotional well-being and their federally protected civil rights.

112.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered irreparable injury, including past and future pecuniary losses, lost benefits, emotional pain, suffering, humiliation, inconvenience, mental anguish and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

(H) Declaring all acts in violation of Title VII;

(I) Enjoining and permanently restraining Defendant from continued violations of Title VII;

(J) Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiffs' respective employment opportunities;

(K) Directing Defendant to unconditionally reinstate Plaintiffs to their respective prior positions, or if not feasible, to pay front pay to each Plaintiff in lieu of reinstatement, and to make each Plaintiff whole for all earnings and benefits she would have received but for the Defendant's wrongful conduct, including, but not limited to, wages and other lost benefits;

(L) Awarding Plaintiffs compensatory and punitive damages;

(M) Awarding Plaintiffs the costs of this action, prejudgment interest and reasonable attorneys fees; and

(N) Granting such additional relief as the Court may deem just and proper.

**COUNT IV**

18

**Title VII: Retaliation**
**All Plaintiffs v. Defendant**

COMES NOW Plaintiffs and for Count III of their Complaint against Defendant allege and state as follows:

113.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if set forth herein.

114.    Plaintiffs engaged in protected activity by respectively reporting the gender discrimination and sexual harassment each was experiencing to Defendant Spriggs.

115.    Defendant retaliated against Plaintiffs by falsely writing Plaintiffs up after Plaintiffs complained, making unreasonable demands of Plaintiffs but not of other similarly situated employees, harassing Plaintiffs, and by forcing Plaintiffs to either resign, or terminating Plaintiffs.

116.    The aforementioned discrimination and harassment of Plaintiffs was discriminatory and intentional, and constituted a disparity in treatment toward Plaintiffs because of their gender (female) and their age (over 40), in willful violation of Title VII.

117.    In engaging in the aforementioned unlawful practices, Defendant acted in conscious and reckless disregard for Plaintiffs' physical and emotional well-being and their federally protected civil rights.

118.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered irreparable injury, including past and future pecuniary losses, lost benefits, emotional pain, suffering, humiliation, inconvenience, mental anguish and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

      (A)    Declaring all acts in violation of the Title VII;

      (B)    Enjoining and permanently restraining Defendant from

continued violations of the Title VII;

(C)  Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiffs' respective employment opportunities;

(D)  Directing Defendant to unconditionally reinstate Plaintiffs to their respective prior positions, or if not feasible, to pay front pay to each Plaintiff in lieu of reinstatement, and to make each Plaintiff whole for all earnings and benefits she would have received but for the Defendant's wrongful conduct, including, but not limited to, wages and other lost benefits;

(E)  Awarding Plaintiffs compensatory and punitive damages;

(F)  Awarding Plaintiffs the costs of this action, prejudgment interest and reasonable attorneys fees; and

(G)  Granting such additional relief as the Court may deem just and proper.


**V. JURY DEMAND**

Plaintiffs request a trial by jury on all issues triable to a jury.


Respectfully submitted,


__/s/Kelly McCambridge-Parker_____

Kelly McCambridge-Parker #60839
McCambridge Law LLC
1308 NE Windsor Drive

20

Lee's Summit, MO 64086
P: 816.875.2386
F: 816.875.2388

ATTORNEY FOR PLAINTIFF